UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES LUCA,<br><br>                Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY<br>COMMISSIONER et al.,<br><br>                Defendants. | Case No. 22-11169<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF NO. 10)**

**I.    Introduction**

Plaintiff James Luca sues defendants Kililo Kijakazi, the Acting Commissioner of the Social Security Administration (SSA or the agency), Lisa McCrary, and Oussami Bazzi, SSA District Managers for employment discrimination action. ECF No. 1. Defendants move to dismiss, and the motion has been fully briefed. ECF Nos. 10, 20-21. The assigned magistrate judge held a hearing on the motion, and it is now ripe for decision. For the reasons below, the Court grants in part and denies in part the motion.

## II.     Background

Luca worked as a customer service representative at the Social Security Administration (SSA). ECF No 1-2, PageID.42. In March 2015, he was diagnosed with a heart condition. Beginning in 2016, Luca sought leave without pay (LWOP) from the SSA as a reasonable accommodation for a cardiac-related disability. *Id*. at PageID.30-32. Luca's requests for LWOP were approved until March 2017. *Id*. When Luca renewed his LWOP request for another six months, the agency denied that request and advised him that LWOP was no longer available and that he could request additional leave under the Family Medical Leave Act (FMLA) to extend his absence. *Id.* Luca applied for and was granted LWOP under the FMLA effective March 27, 2017 through June 19, 2017. *Id*. at PageID.31.

In this same timeframe, the agency discovered Luca was working as a full-time sales representative for a private corporation during his absence from the SSA. ECF No. 10-2. Upon this discovery, the agency notified Luca that all of his previously approved leave beginning in May 2016 would be converted to absence without leave (AWOL). ECF No. 1-2, PageID.32.

On April 24, 2017, plaintiff filed a formal Equal Employment Opportunity Commission (EEOC) complaint based on the denial of his

LWOP requests.[1] ECF No. 1, PageID.14. Luca alleged the agency discriminated against him based on race, disability, age, and in retaliation for prior protected activity by denying his requests for a reasonable accommodation and LWOP under the FMLA. ECF No. 1-2, PageID.42-43. The EEOC investigated in July 2017, and Luca requested a hearing before an administrative law judge (ALJ). The ALJ granted summary judgment to the SSA in a decision which found that Luca failed to meet his burden of showing a sufficient nexus between his disability and the need for accommodation, here the LWOP. *Id*. at PageID.40-41. The decision notes that while Luca was seeking additional leave from SSA, he was working as full-time account manager at a private corporation, which required domestic and international travel. *Id*. The EEOC affirmed the ALJ's decision on appeal, and Luca's request for reconsideration was denied. *Id*.; ECF No. 1-3.

In conjunction with the conversion of Luca's LWOP to AWOL, the SSA issued a notice of indebtedness to the agency reflecting amounts it

---

[1] Notwithstanding the allegation that the SSA discriminated against Luca by denying LWOP under FMLA, the records before the Court show that the SSA approved Luca's request for LWOP under FMLA, ECF No. 1-2, PageID.31. Accordingly, the Court construes the revocation of approved LWOP and retroactive conversion of Luca's approved leave to AWOL as the alleged denied requests for LWOP. Id. at PageID.32.

alleged Luca owed because of an overpayment of wages. ECF No. 1-2, PageID.35-36. The notification laid out the administrative process for challenging the debt under the Debt Collection Act. *Id*. Luca did not invoke that process. He eventually received a Notice of Intent to Initiate Administrative Wage Garnishment Proceedings letter from the Department of Treasury in its effort to collect the portion of the debt still owed. *Id*. at PageID.45.

The SSA removed Luca from federal service effective December 19, 2017. *Id*. at PageID.38. The formal written removal decision cited Luca's failure to obtain approved leave status for the majority of his leave of absence, which resulted in charges of AWOL, and conduct unbecoming of a federal employee. ECF No. 10-2. It also detailed the options for appealing the decision. *Id.* at PageID.110-15. The decision dictated that Luca could choose only one option and that his choice was binding and irrevocable. *Id.* at PageID.111. Luca elected to file a grievance under the negotiated grievance procedure. ECF No. 10-3; ECF No. 10-4. Luca's grievance was denied through all three steps of the procedure. Although he requested his union representative invoke arbitration, Luca stated at the hearing of this matter that the union did not pursue arbitration on his behalf and that he had pursued the grievance through step three.

Luca initiated this action after the EEOC denied his request for reconsideration of its decision on his formal complaint. He alleges discrimination based on his removal from federal service, the SSA's denial of reasonable accommodations for his disability, and retaliation. ECF No. 1. He asserts that SSA's conduct violated Title VII, the Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), the Fifth and Fourteenth Amendments,[2] FMLA, and the Labor Relations Management Act (LMRA). *Id.*

The SSA moves to dismiss Luca's claims stemming from his removal from service (as opposed to those arising from his denied requests for leave)[3] and from the agency's assessment and collection of debt for overpaid wages for lack of subject matter jurisdiction because Luca did not exhaust his administrative remedies for these claims. The agency also moves to dismiss Luca's claims asserted under the Fifth and Fourteenth Amendments and the ADA for failure to state a claim upon which relief may be granted and his claims under the FMLA and the LMRA for lack of subject matter jurisdiction. Finally, it moves to dismiss defendants McCrary

---

[2] Luca's complaint cites to the Fourth and Fifteenth Amendments, but he acknowledged at the hearing that he intended to assert claims under the Fifth and Fourteenth Amendments.

[3] Defendants do not move to dismiss these claims. *See* ECF No. 10.

and Bazzi from this action because the Commissioner is the lone proper defendant for Luca's claims. For the reasons discussed below, the Court grants in part and denies in part defendants' motion.

### III. Standard of Review

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and can be either a facial or factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In facial attacks, the Court accepts the complaint's allegations as true; in factual attacks, it "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The party invoking federal jurisdiction—here, Luca—bears the burden of proving the existence of federal jurisdiction. *Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308, 311 (6th Cir. 2017). The Court, however, must ultimately "police the boundaries of its limited jurisdiction." *Williams v. City of Detroit*, No. 16-14112, 2019 WL 2410719, at *3 (E.D. Mich. June 7, 2019).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal

marks omitted). Courts construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. *Golf Village*, 14 F.4th at 617 (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)). When a complaint adequately states a claim, it may not be dismissed based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8. In deciding a motion brought under Rule 12(b)(6), the Court may consider exhibits outside the pleadings if they are referenced in the complaint and central to its claims; matters of public record; items appearing in the record; or exhibits attached to the pleadings. *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

    Where a plaintiff proceeds pro se, the Court must liberally construe the plaintiff's pleadings, and plaintiff is held to less stringent standards than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). But "the lenient treatment generally accorded pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Pro se plaintiffs must still meet basic pleading requirements, and courts are not

required to conjure allegations on their behalf. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

## IV. Analysis

### A. Removal from Federal Service

The Court first addresses the SSA's contention that Luca's claims challenging his removal from federal service should be dismissed for lack of subject matter jurisdiction. The agency argues that Luca's rights as a federal employee were governed by the Civil Service Reform Act (CSRA), specifically 5 U.S.C. § 7121(d), "which explicitly requires an aggrieved employee to make an irrevocable election of remedies." *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989). As set forth in the written decision of removal, Luca could choose from several methods to appeal the agency's decision to remove him from federal service. ECF No. 10-2, PageID.110-15. To assert a claim of discrimination, Luca could challenge the agency's decision by way of the negotiated grievance procedure, an appeal to the Merit Systems Protection Board (MSPB), or an EEOC complaint. ECF No. 10-2; ECF No. 10-4, PageID.130. The agency maintains that Luca may not challenge his removal from service in this action because he elected to contest it through the negotiated grievance process and did not exhaust that process.

Indeed, under the CSRA, an aggrieved employee affected by a prohibited personnel practice which falls under the coverage of a negotiated grievance procedure may raise the matter either under a statutory procedure or the negotiated procedure, but not both. 5 U.S.C. § 7121(d). An employee is deemed to have elected his method of recourse at the time he initiates an action under the applicable statutory procedure or timely files a grievance in writing. *Id.*

Luca does not dispute that he elected to pursue the negotiated grievance process as recourse for his challenged removal from service. Rather, he argues that this Court has jurisdiction over the removal from service claims because they grew out of the same discriminatory conduct challenged in his fully-exhausted EEOC complaint.

Generally, each discrete adverse employment decision, such as termination or denial of leave, constitutes a separate actionable unlawful employment practice, which must be exhausted. *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002). However, failure to explicitly state a potential claim in an EEOC complaint does not always fail to administratively exhaust that claim. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). EEOC complaints "should be liberally construed to encompass all claims reasonably expected to grow out of the charge of

discrimination." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Adverse actions occurring after the EEOC complaint was filed and carried out in retaliation for the plaintiff's protected activity, usually the filing of the EEOC complaint itself, may be reviewed by the district court without separate exhaustion if the retaliation claim is reasonably related to the claims plaintiff asserted in the exhausted EEOC complaint. *Delisle v. Brimfield Twp. Police Dep't,* 94 F. App'x 247, 252-54 (6th Cir. 2004). A second EEOC filing is unnecessary if the defendant was already on notice, and the EEOC had the opportunity to investigate the "reasonably related" claim. *Id*. at 254.

Here, Luca's removal from service was an adverse action distinct from the denial of LWOP because the removal occurred in December 2017, five months after the EEOC completed its investigation in July 2017. Accordingly, Luca's claim that the SSA discriminated against him by removing him from service would require separate administrative exhaustion to permit judicial review. Because Luca eschewed a second EEOC charge in favor of the negotiated grievance procedure, the Court does not have jurisdiction over Luca's discrimination claims for his removal from service. However, to the extent that Luca's complaint may be construed liberally to allege that his removal from service was in *retaliation*

for his initial EEOC charge (or any other protected activity), that claim did not require separate exhaustion and could be considered by the Court along with the claims from the exhausted EEOC complaint. *See id.*

Luca also argues that the Court has jurisdiction to review his discrimination claims stemming from his removal from service because he exhausted the negotiated grievance procedure. The CSRA does provide a path by which an aggrieved federal employee who exhausted a negotiated grievance procedure can obtain judicial review. *Am. Fed'n of Gov't Employees, Local 2052 v. Reno*, 992 F.2d 331, 336 (D.C. Cir. 1993). Under the CSRA, an aggrieved federal employee who elects to pursue a mixed case—one that alleges both discrimination and a serious personnel action against a federal employee—through the negotiated grievance procedure must appeal the arbitrator's decision to the MSPB to access judicial review. *Id.*; 5 U.S.C. §§ 7121(d), 7703(b)(2).

The agency argues that judicial review is unavailable to Luca because he did not appeal the arbitrator's decision to the MSPB. Luca counters that he was stymied from exhausting the CSRA requirements for judicial review because the union did not pursue arbitration of his claims after he completed all three steps of the grievance process without relief and requested the union invoke arbitration on his behalf. Luca relies on

*Fernandez v. Chertoff* to support his argument that his failure to exhaust the negotiated grievance procedure remedy should be excused because he was left without relief when the union declined to invoke arbitration on his behalf. 471 F.3d 45, 55-58 (2d Cir. 2006). In *Fernandez*, the union withdrew the aggrieved employee's grievance without his consent before a final decision in arbitration could be given. *Id*. at 60. The court concluded that equitable considerations should be weighed to determine if the union's unilateral withdrawal from arbitration excused the aggrieved employee's failure to exhaust his elected remedy of the negotiated grievance procedure. *Id*. at 58, 60.

Notwithstanding *Fernandez*, neither the terms of the negotiated grievance procedure nor the CSRA require the final decision to be the decision of an arbitrator. Without doubt, any arbitration decision issued as part of this grievance procedure would be the final decision. See ECF No. 10-4, PageID.139. However, the negotiated grievance procedure here does not require the grievance to advance to arbitration. Indeed, the procedure clearly spells out that arbitration is elective at the discretion of the union or the SSA. "A grievance processed under this agreement, if unresolved, *may* be referred to arbitration . . . . Only the Union or the Administration may refer a grievance to arbitration." *Id.* at PageID.137. If the written "decision

[from the final step of the grievance procedure] is not acceptable, the Union *may* refer it to arbitration . . ." *Id.* at PageID.132.

Nor does the SSA's written decision of removal suggest an arbitration decision must issue before proceeding to the next level. It provides that, after deciding to file a grievance under the negotiated procedure, Luca still had the right to appeal to the MSPB as follows: "After you receive the . . . final decision on your . . . grievance, any MSPB appeal must be filed . . . within 35 calendar days of the grievance decision under the negotiated procedure." ECF No. 10-2, PageID.113.

Moreover, nothing in the CSRA dictates that a final decision may only be produced through arbitration. The CSRA provides that "[s]election of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the *final decision* pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board." 5 U.S.C. 7121(d) (emphasis added). Accordingly, the Court does not find that the union's refusal to invoke arbitration precluded Luca from appealing the final decision from the grievance procedure to the MSPB. His failure to so appeal that final decision deprives the Court of subject matter jurisdiction over his claims for removal from service.

### B. Collection/Garnishment of Overpayment

The SSA also seeks dismissal of Luca's claim to recover the amounts assessed and collected for overpaid wages. *See* ECF No. 1-2, PageID.35. The agency argues that the process for challenging the notice of overpayment, spelled out in the notice it sent to Luca, is governed by the Debt Collection Act (DCA), 5 U.S.C. § 5514. *See id*. The DCA provides the debtor with an opportunity to inspect and copy records relating to the debt and to have a hearing on the existence or the amount of the debt. 5 U.S.C. § 5514(a)(2). Luca does not dispute that he did not pursue the remedies provided under the DCA and does not assert that it provides a private cause of action. Moreover, Luca challenges a sovereign government action, and the DCA contains no waiver of sovereign immunity. Accordingly, the Court does not have subject matter jurisdiction to consider Luca's challenge of the assessment and collection of the SSA's claimed overpayment. *Jordan v. Defense Finance and Acct. Servs.*, 744 F. App'x 692, 698 (11th Cir. 2018).

To the extent Luca claims that the notice of overpayment was its own discriminatory action against him, for the reasons discussed above, that distinct adverse action was not separately exhausted and is thus not subject to judicial review. However, nothing precludes Luca from pursuing

the amounts charged to and paid by him as a result of his denied LWOP or LWOP-to-AWOL conversion as damages in his surviving discrimination claims.

### C. Luca's Other Claims

The agency seeks dismissal of the discrimination claims Luca asserts under the Constitution and a variety of federal statutes. Luca asserts a Due Process claim under the Fifth and Fourteenth Amendments. He conceded at oral argument that the Fourteenth Amendment did not apply because he asserts no claims against a state. Luca cannot state a viable claim under the Fifth Amendment because specific statutory remedies preclude constitutional claims as an alternative avenue of relief. *Smith v. U.S. Postal Serv.*, 766 F.2d 205, 206 (6th Cir. 1985). Title VII provides the exclusive remedy for employment discrimination for federal employees on the basis of race, color, religion, sex, and national origin. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). And the Rehabilitation Act, 29 U.S.C. § 794, constitutes the exclusive remedy for federal employee alleging disability-based discrimination. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007), *overruled on other grounds, Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). Accordingly, Luca's claims asserted under the Fifth Amendment fail as a matter of law and are dismissed.

Likewise, as noted above, the Rehabilitation Act, not the ADA, provides the exclusive remedy for federal employees claiming disability discrimination. *Id*. Luca's ADA claims must also be dismissed.

Finally, the Court lacks subject matter jurisdiction over Luca's asserted claims under the LMRA and the FMLA. LMRA does not apply to members of public sector unions. *Richards v. Ohio Civ. Serv. Emps. Ass'n*, 205 F. App'x 347, 354 (6th Cir. 2006). Similarly, federal courts do not have subject matter jurisdiction over Luca's FMLA claim because Title II of the FMLA, 5 U.S.C. § 6381 *et seq.*, which governs leave for federal civil service employees with more than twelve months of service, does not provide a private right of action to an employee. *Doucette v. Johnson*, 2017 WL 840406, at *4-5 (E.D. Mich. Mar. 3, 2017) (citing *Russel v. Dep't of the Army*, 191 F.3d 1016, 1018-19 (9th Cir. 1999)). Accordingly, the Court dismisses Luca's claims under the LMRA and FMLA for lack of subject matter jurisdiction.

### D. Defendants McCrary and Bazzi

Luca conceded at the hearing on this motion that only the Commissioner, defendant Kijakazi, is a proper defendant in this action. Accordingly, defendants McCrary and Bazzi are dismissed from the case.

## V.     Conclusion

For the reasons above, defendants' motion to dismiss (ECF No. 10) is **GRANTED IN PART and DENIED IN PART**. Luca's claims under the Fifth and Fourteenth Amendments, the ADA, the FMLA, and the LMRA are **DISMISSED**. His discrimination claims stemming from his removal of service, as well as any claim challenging the notice of overpayment are also **DISMISSED**. Defendants McCrary and Bazzi are **DISMISSED** from this action.

Luca's discrimination claims stemming from the SSA's denial of his LWOP and conversion of his previously approved absence from work to AWOL and any claim that his removal from service was due to retaliation survive.

**IT IS SO ORDERED**.

Dated: September 30, 2023

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge